**CASE NO. 25-1788**

---

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

PORCHA WOODRUFF,

Plaintiff-Appellant,

-vs-

CITY OF DETROIT

Defendant,

and

LASHAUNTIA OLIVER,

Defendant-Appellee.

On Appeal from the United States District Court
for the Eastern District of Michigan Southern Division

---

**PLAINTIFF-APPELLANT'S BRIEF ON APPEAL**

---

LAW OFFICES OF
IVAN L. LAND, P.C.

IVAN . LAND
**Attorney for Plaintiff-Appellant**
**25900 Greenfield Rd. Suite 210**
**Oak Park, MI 48237**
**(248) 968-4545**

GRANZOTTO & WITTMANN, P.C.

MARK GRANZOTTO
BETH A. WITTMANN
**Attorneys for Plaintiff-Appellant**
**2684 Eleven Mile Road, Suite 100**
**Berkley, Michigan 48072**
**(248) 546-4649**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**
**(This statement should be placed immediately preceding the statement of issues contained in the brief of the party. See enclosed copy of the 6th Cir. R. 25.)**

Porcha Woodruff,

     Plaintiff-Appellant,                        Case No. 25-1788

-vs-

City of Detroit,

     Defendant,

and LaShauntia Oliver,

     Defendant-Appellee.

_____/

**DISCLOSURE OF CORPORATE AFFILIATIONS**
**AND FINANCIAL INTEREST**

Pursuant to 6th Cir. R. 25, Beth A. Wittmann makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  **NO**
    If the answer is YES, list below the identity of the parent corporation or affiliate and the relationship between it and the named party.

2.    Is there publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  **NO**
    If the answer is YES, list the identity of such corporation and the nature of the financial interest:

 /s/ Mark Granzotto                          May 12, 2026
 (Signature of Counsel)                        (Date)

i

# TABLE OF CONTENTS

**Page**

DISCLOSURE OF CORPORATE AFFILIATIONS
AND FINANCIAL INTEREST . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT IN SUPPORT OF ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . 1

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

    I.      STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

    II.    THE DISTRICT COURT ERRED IN GRANTING SUMMARY
            JUDGMENT AS TO MS. WOODRUFF'S FEDERAL AND
            STATE FALSE ARREST/FALSE IMPRISONMENT CLAIMS . . 28

          A.     Ms. Woodruff's Federal False Arrest/False Imprisonment
                Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

          B.     Ms. Woodruff's State Law False Arrest/False
                Imprisonment Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

III.    THE DISTRICT COURT ALSO ERRED IN GRANTING SUMMARY JUDGMENT AS TO MS. WOODRUFF'S FEDERAL AND STATE MALICIOUS PROSECUTION CLAIMS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

      A.    Ms. Woodruff's Federal Malicious Prosecution Claim . . . . . 37

      B.    Ms. Woodruff's State Law Malicious Prosecution Claim . . . 44

IV.    THE DISTRICT COURT ALSO ERRED IN GRANTING SUMMARY JUDGMENT AS TO MS. WOODRUFF'S INTENSION INFLICTION OF EMOTIONAL DISTRESS CLAIM. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

CERTIFICATION PURSUANT TO FRAP 32(a)(7)(C). . . . . . . . . . . . . . . . . . . 50

DESIGNATION OF RECORD ON APPEAL. . . . . . . . . . . . . . . . . . . . . . . . . 51

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

# <u>INDEX OF AUTHORITIES</u>

<u>Page</u>

<u>Cases</u>

*Ahlers v. Schebil,*
188 F.3d 365 (6th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Doe v. Mills,*
536 N.W.2d 824 (Mich. App. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Foster v. Patrick,*
806 F.3d 883 (6th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Gardenhire v. Schubert,*
205 F.3d 303 (6th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Graham v. Ford,*
604 N.W.2d 713 (Mich. App. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Gregory v. City of Louisville,*
444 F.3d 725 (6th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Harris v. Bornhorst,*
513 F.3d 503 (6th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Jackson v. City of Cleveland,*
925 F.3d 793 (6th Cir. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Kehl v. Burtis,*
173 F.3d 646 (8th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Klein v. Long,*
275 F.3d 544 (6th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Linebaugh v. Sheraton Michigan Corp.,*
497 N.W.2d 585 (Mich. App. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Martin v. Toledo Cardiology Consultants, Inc.,*
548 F.3d 405 (6th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Matthews v. Blue Cross & Blue Shield of Michigan,*
572 N.W.2d 603 (Mich. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Parsons v. City of Pontiac,*
533 F.3d 492 (6th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Peterson Novelties, Inc. v. City of Berkley,*
259 Mich. App. 1 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Peterson Novelties, Inc. v. City of Berkley,*
672 N.W.2d 351 (Mich. App. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Renda v. International Union,* UAW,
114 N.W.2d 343 (Mich. 1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Sykes v. Anderson*,
625 F.3d 294 (6th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*United States v. Davis*,
514 F.3d 596 (6th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Voyticky v. Village of Timberlake, Ohio*,
412 F.3d 669 (6th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Walsh v. Taylor*,
689 N.W.2d 506 (Mich. App. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Webb v. United States*,
789 F.3d 647 (6th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Weser v. Goodson*,
965 F.3d 507 (6th Cir. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Wilson v. Morgan*,
477 F.3d 326 (6th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

**<u>Rules</u>**

6th Cir. R. 25 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

6th Cir. R. 29(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

Fed. R. App. P. 4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R. App. P. 32(a)(7)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

**<u>Statutes</u>**

28 U.S.C. §1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. §1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §1343 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C.§1367 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Plaintiff-Appellant hereby requests oral argument in this matter. Because of the complexity of the district court factual record and the rationale for the district court's ruling, plaintiff would suggest that the Court might derive some benefit from oral argument.

## JURISDICTIONAL STATEMENT

Porcha Woodruff filed this action on August 10, 2023. (RE.4: Complaint; PageID#61-116). Ms. Woodruff named in the complaint LaShauntia Oliver, a City of Detroit Police Officer, and the City of Detroit. (*Id.*). The jurisdiction of the district court was predicated on 42 U.S.C. §1983 and 28 U.S.C. §1331, §1343, and §1367.

The district court entered an order dismissing the City of Detroit as a defendant on November 6, 2024. (RE.24: Order; PageID#747-748). Officer Oliver filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56 seeking dismissal of all of plaintiff's claims against her. (RE.23: Defendant's Motion for Summary Judgment; PageID#321-746). Ms. Woodruff filed a motion for partial summary judgment, seeking judgment in her favor on several of her claims. (RE.25: Plaintiff's Motion for Summary Judgment; PageID#749-781).

On August 5, 2025, the district court issued a written opinion on the cross-motions for summary judgment. (RE.78: Order; PageID#2245-2293). The district

1

court granted summary judgment to Oliver and denied Ms. Woodruff's motion for partial summary judgment. (*Id.*).

The district court entered a judgment dismissing Ms. Woodruff's case with prejudice on August 5, 2025. (RE.79: Judgment; PageID#2294).

On August 30, 2025, within the thirty day period provided in Rule 4 of the Federal Rules of Appellate Procedure, Ms. Woodruff filed a Notice of Appeal. (RE.80: Notice of Appeal; PageID#2295-2297). This Court has jurisdiction to consider the plaintiffs' appeal under 28 U.S.C. §1291.

## STATEMENT OF THE ISSUES PRESENTED

Whether the district court erred in concluding that LaShauntia Oliver was entitled to dismissal of Ms. Woodruff's claims of false arrest/false imprisonment and malicious prosecution when Officer Oliver lacked probable cause to request an arrest warrant for Ms. Woodruff's arrest.

Whether the district court erred in concluding that dismissal was proper as to Mr. Woodruff's intentional infliction of emotional distress claim because Officer Oliver's conduct was not "extreme and outrageous."

## STATEMENT OF THE CASE

On January 29, 2023, Laurence Walker reported to the Detroit Police Department that he was robbed and carjacked at gunpoint. (RE.23-5: Report;

PageID#363; RE.61-1: Statement; PageID#1789-1790). Mr. Walker reported that he picked up an unknown female at Hoover Market in the area of 7 Mile and Hoover and they started drinking liquor together. (*Id.*). He indicated that he believed the female did something to his drink because he "started feeling really tired and . . . passed out." (*Id.*). When he woke up, he drove the female to the area of Gratiot and Bessemore to drop her off. (*Id.*).

When Mr. Walker parked the vehicle to allow the woman to get out, he saw her get into a black Tahoe that was parked on the other side of the street. (*Id.*). A man exited the Tahoe and approached Mr. Walker's vehicle, stating that the woman left her phone in his car. (*Id.*). Mr. Walker exited his vehicle to look for the phone, at which point the man produced a hand gun and told Mr. Walker to take off his clothes in order to prove he was not carrying a gun. (*Id.*). Mr. Walker removed his pants and jacket and kicked off his shoes, and the man then got into Mr. Walker's car and drove away. (*Id.*). Mr. Walker stated that his cellphone and wallet were in the vehicle when it was taken. (*Id.*).

Mr. Walker described the man as a black male, light brown complexion, short, slim build, with short braids, and a beard and thin mustache. (RE.23-5: Report; PageID#363; RE.61-1: Statement; PageID#1790). He described the woman as a black female, brown complexion, brown and blond long hair, slim build, approximately 5

3

feet 4 inches tall. (RE.23-5: Report; PageID#363).

LaShauntia Oliver, an officer in the commercial auto theft unit of the Detroit Police Department, was assigned Mr. Walker's case. (RE.70-5: Warrant Request; PageID#2028-2046).[1]

Officer Oliver contacted Mr. Walker on January 31, 2023, at which time Mr. Walker advised her that his cellphone had been returned to a BP gas station located at 6420 Van Dyke by a female. (*Id.*; PageID#2029). Officer Oliver went to the BP gas station to view the video security footage from the day before to determine the identity of the female who returned the cellphone. (*Id.*).

The January 30, 2023 video footage depicted a black female, medium complexion, with "the same exact hair style (honey blonde/brown) curly wig" as the female who was described to her by Mr. Walker. (*Id.*; RE.64-5: Video; PageID#1949). The video demonstrated that when the female suspect returned Mr.

---

[1] There were two versions of the warrant request submitted below. Ms. Woodruff submitted one version with her complaint while defendant submitted a different version with her motion for summary judgment. (RE.4-1: Warrant Request; PageID#85-88; RE.61-2: Warrant Request; PageID#1791-1794). Defendant submitted supplemental briefing demonstrating that the warrant request attached to the complaint was the final version, and Ms. Woodruff did not dispute that fact. (RE.78: Opinion and Order, at 13-14; PageID#2257-2258). The district court therefore relied upon the version of the warrant request that was attached to the complaint, but referred to the warrant request attached at ECF No. 70-5; PageID#2028-2032 in its analysis. (*Id.*).

Walker's cellphone, she was allowed behind the bullet proof glass and had an extensive conversation with the gas station clerk. (RE.64-5: Video; PageID#1949). Officer Oliver submitted a request to extract the video footage of the female who returned Mr. Walker's cellphone to the BP gas station. (RE.70-5: Warrant Request; PageID#2029).

Officer Oliver submitted a facial recognition request using an image obtained from the security cameras. (RE.70-5: Warrant Request; PageID#2029; RE.64-7: Case Supplemental Report; PageID#1951; RE.62-3:Video Images; PageID#1929-1930, 1933-1934). Facial recognition identified a number of possible individuals, including Porcha Woodruff. (RE.70-5: Warrant Request; PageID#2029; RE.64-7: Case Supplemental Report; PageID#1951).

Crime Analyst Nathan Howell, a member of the Crime Intelligence Unit, conducted the facial recognition search on February 2, 2023. (RE.61-3: Facial Recognition Document; PageID#1795; RE.64-7: Case Supplemental Report; PageID#1951). According to the police report, out of the 73 candidates provided by the search, Mr. Howell selected Ms. Woodruff as the "investigative lead." (*Id.*). The photograph that the facial recognition generated for Ms. Woodruff was from a 2019 mugshot. (RE.61-3: Facial Recognition Document; PageID#1795). Mr. Howell sent a disclaimer to Officer Oliver indicating that facial recognition result is an

5

investigative lead and "is not to be used as probable cause to arrest the suspect nor is it a positive identification for a suspect." (RE.64-7: Case Supplemental Report; PageID#1951).

Officer Oliver obtained a second statement from Mr. Walker on February 2, 2023, at which time he disclosed additional information regarding the carjacking. (RE.61-4: Walker Statement; PageID#1797-1798). Mr. Walker indicated that the female he picked up from the Hoover Market on January 29, 2023 was named "Trinidad" and that they had sex in his vehicle. (*Id.*). Mr. Walker indicated that he and Trinidad at approximately 6:30 p.m. drove to the same BP gas station where his cellphone was returned. (*Id.*). He observed Trinidad interacting with several people at the gas station, including two men in a black Tahoe. (*Id.*). He stated that after he and Trinidad left the gas station, he drove to the area of Bessemore and Gratiot, where he saw what he believed to be the same Tahoe that was at the gas station. (*Id.*). He indicated that he was carjacked by a light-skinned man who exited the Tahoe. (*Id.*). He indicated that Trinidad "was just standing in the street not doing anything to help" at the time of the carjacking. (*Id.*). He described the female as having brown skin and a honey blonde/brown curly wig, wearing brown boots and gray sweat pants. (*Id.*).

Officer Oliver returned to the BP gas station a second time to view the video security footage from January 29, 2023, the night of the carjacking. (RE.70-5:

Warrant Request; PageID#2029-2030). She observed on the video Mr. Walker's vehicle entering the parking lot of the gas station at approximately 5:53 p.m. on that date, and observed the female – whom she identified in her report as "Defendant Woodruff" – exiting the passenger seat of Mr. Walker's vehicle and interacting with several people in the gas station parking lot. (*Id.*). She also observed the female and a black male pulling and tugging on Mr. Walker while he was in the driver's seat of his vehicle and they appeared to take an item from Mr. Walker. (*Id.*). She noted in her report that Mr. Walker had indicated to her his belief that he may have been drugged by the female suspect. (*Id.*).

Officer Oliver submitted a second request to extract the video footage of the events that occurred at the BP gas station on January 29, 2023. (RE.23-14: Request; PageID#392-394). The photographs taken of the video footage show the parking lot of the gas station as well as the male and female suspects. (RE.62-3: Video Images; PageID#1928, 1931-1932, 1935-1937).

Also on February 2, 2023, officers observed Mr. Walker's stolen vehicle being driven near Van Dyke and Lynch in Detroit. (RE.70-5: Warrant Request; PageID#2030; RE.61-5: Case Supplemental Report; PageID#1799-1803). Officers conducted a traffic stop and arrested Daniel White, who was driving Mr. Walker's stolen vehicle. (*Id.*). Mr. White was described as a black male, thin build, medium

complexion, with a short beard/mustache and a bald head. (RE.61-5: Case Supplemental Report; PageID#1802; RE.61-7: Interrogation Record; PageID#1808). Mr. White was arrested with his child in the backseat of the vehicle. (*Id.*).

Mr. White was brought to the police station and interrogated by Officers Ned Gray and Quentin Glover. (RE.41-2: Audio Transcript; PageID#1637-1680; RE.64-9: White Interrogation Video; PageID#1953; RE.70-5: Warrant Request; PageID#2032). Mr. White stated that he knew the female who goes by the name of "Trinidad" but denied any involvement in the carjacking of Mr. Walker. (*Id.*). Mr. White was shown a photograph of the female suspect from the gas station video and he identified her as the woman "Trinidad." (RE.41-2: Audio Transcript; PageID#1646). He indicated he had "Trinidad's" Facebook page and that she identified herself as "Trinidad Trinity" on Facebook. (*Id.*; PageID#1647-1648). He also indicated that he had "Trinidad's" telephone number in his cellphone. (*Id.*; PageID#1648).

Mr. Walker presented to the police station on February 3, 2023 and participated in a photo lineup to identify both the male and female suspects involved in the January 29, 2023 events. (RE.70-5: Warrant Request; PageID#2030-2032). Mr. Walker positively identified Mr. White as the person who carjacked him in a photo lineup. (*Id.*; RE.23-16: Photo Lineup; PageID#400-411). He also viewed a photo lineup that included a photograph of Ms. Woodruff, and he identified Ms. Woodruff

8

as the female he was with on the night of the carjacking. (RE.70-5: Warrant Request; PageID#2030-2032; RE.61-6: Photo Lineup; PageID#1804-1805). The photograph of Ms. Woodruff was not the same photograph that was generated through the facial recognition search, but was instead an eight-year-old mugshot from 2015. (*Id.*; RE.37-1: Woodruff Dep, at 13; PageID#1259).[2] Mr. Walker indicated that he identified Ms. Woodruff "based on seeing the individual in person the multiple hours prior to me being carjacked." (RE.62-2: Witness Statement; PageID#1884).

Based upon Mr. Walker's identification of the two individuals, Officer Oliver submitted a warrant request to the Wayne County Prosecutor's Office for Mr. White and Ms. Woodruff. (RE.70-5: Warrant Request; PageID#2028-2032; RE.61-8: Warrant; PageID#1809-1811). A prosecutor, Garrett Garcia, approved the request and the warrant was signed by a 36th District Court magistrate on February 4, 2023. (*Id.*).

On February 16, 2023, Ms. Woodruff was arrested by the Fugitive Apprehension Team (FAST) at her home in front of her family. (RE.61-10: Case Supplemental Report; PageID#1824; RE.41-3: Audio Transcript; PageID#1681-1693). Ms. Woodruff willingly exited her home and was taken into custody and

---

[2] Officer Oliver later testified at her deposition that she was "not allowed" to use the photograph of Ms. Woodruff that was considered a "match" from the facial recognition search in the photo lineup that she presented to Mr. Walker. (RE.23-25: Oliver Dep, at 81-82; PageID#547-548).

conveyed to the Detroit Detention Center without incident. (*Id.*). She arrived at the detention center at approximately 8:20 a.m. and was processed and booked and her cellphone was placed into evidence. (*Id.*).

Officer Oliver interviewed Ms. Woodruff at approximately 3:00 p.m., at which time she learned that Ms. Woodruff was eight months pregnant "and very much showing." (RE.23-25; Oliver Deposition, at 44-45; PageID#510-511; RE.23-27: Case Notes; PageID#638; RE.61-11: RE.64-17: Photo of Woodruff; PageID#1972). Based upon her review of the video footage from the BP gas station, which demonstrated that the female suspect was not pregnant, Officer Oliver knew that she had the wrong person in custody. (RE.23-25; Oliver Deposition, at 44-45; PageID#510-511; RE.23-27: Case Notes; PageID#638). Ms. Woodruff also had a tattoo on her right arm that the female suspect did not have. (RE.23-25; Oliver Deposition, at 42; PageID#508).

Ms. Woodruff provided a statement to Officer Oliver in which she denied any involvement in the car jacking. (RE.61-11: Woodruff Statement; PageID#1826-1827). Ms. Woodruff advised Officer Oliver that she was home on January 29, 2023 because "I'm pregnant and been resting due to just finding out I'm a diabetic." (*Id.*).

Despite knowing that Ms. Woodruff was not involved in the carjacking of Mr. Walker, Officer Oliver directed Ms. Woodruff back to the holding cell. (RE.23-27: Case Notes; PageID#638; RE.64-19). Ms. Woodruff was arraigned that same

afternoon on carjacking and armed robbery charges in the 36th District Court before Magistrate Judge Laura Echartea. (RE.23-29: Docket Entries; PageID#642). She entered a plea of not guilty and a probable cause conference was scheduled for February 27, 2023. (*Id.*). She received a $100,000 personal bond and was instructed to have no contact with the victim, Mr. Walker. (*Id.*).

Ms. Woodruff was released from the Detroit Detention Center at approximately 7:00 p.m. on February 16, 2023. Once released, she was taken to St. John Hospital by her fiancé with complaints of stomach tightness and pain. (RE.4: Complaint; PageID#109-111). She learned that she was having contractions and she was diagnosed with dehydration and treated with intravenous fluids. (*Id.*). She remained at the hospital for several hours under observation and was discharged at approximately 12:13 a.m. on February 17, 2023, with instructions to stay hydrated and rest. (*Id.*).

Officer Oliver noted in her police report that she spoke with Magistrate Echartea during Ms. Woodruff's February 16, 2023 arraignment, at which time the magistrate advised her that she needed a prosecutor or a judge to dismiss the warrant. (RE.23-27: Case Notes; PageID#638). Officer Oliver also noted that she spoke with the prosecuting attorney, Mr. Garcia, on February 17, 2023 and advised him that Ms. Woodruff is 34 weeks' pregnant "and cannot be the woman responsible for the

carjacking." (RE.23-30: Case Notes; PageID#644). She further noted that Mr. Garcia indicated that he would "update the case." (*Id.*).

Ms. Woodruff contacted Officer Oliver on February 17, 2023, and requested the return of her cellphone. (RE.64-15: Recording; PageID#1970; RE.41-4: Audio Transcript; PageID#1694-1695). Officer Oliver informed Ms. Woodruff that a warrant was being requested to obtain a call detail from her cellphone to determine if she was in the area when the carjacking occurred. (*Id.*). Ms. Woodruff was ultimately allowed to retrieve her cellphone later that day. (RE.64-16: Property Transfer; PageID#1971).

Officer Oliver prepared a warrant request for Ms. Woodruff's cellphone records on February 18, 2023, two days after her arrest. (RE.64-19: Warrant Request; PageID#1974-1976). Officer Oliver did not include in the warrant request the fact that Ms. Woodruff was eight months pregnant and did not match the physical characteristics of the female suspect. (*Id.*). She submitted the warrant request to another prosecutor, Joe Kurly, who was not familiar with the case, rather than to prosecutor Garrett Garcia. (*Id.*). Mr. Kurly signed the warrant request. (*Id.*).

Officer Oliver presented a search warrant in person to Wayne County Circuit Judge Parentis Edwards. (RE.64-20: Search Warrant; PageID#1977-1978). The search warrant contained language indicating that a crime was being investigated.

(*Id.*). Judge Edwards signed the search warrant on February 22, 2023. (*Id.*).

Ms. Woodruff appeared for her probable cause conference in the 36th District Court on February 27, 2023, before Judge Aliyah Sabree. (RE.23-29: Docket Entries; PageID#642-643; RE.23-31: Tr. 2/27/23; PageID#645-650). At the conference, Ms. Woodruff's criminal defense attorney expressed his belief that the prosecutor was dismissing the matter. (RE.23-31: Tr. 2/27/23, at 3-4; PageID#647-648). The prosecuting attorney, Alexander Kerker, however, stated in response to the defense attorney's statement, "I don't have any information on that." (*Id.*). The judge scheduled Mr. Woodruff's preliminary examination for March 7, 2023, and suggested defense counsel speak with the prosecutor have the case dismissed. (*Id.*, at 4-5; PageID#648-649).

Ms. Woodruff appeared for her preliminary examination on March 7, 2023, at which time the Wayne County Prosecutor's Office dismissed the case against her for insufficient evidence. (RE.23-29: Docket Entries; PageID#643).

Ms. Woodruff filed a complaint on August 10, 2023 in the United States District Court for the Eastern District of Michigan, alleging that Officer Oliver violated her constitutional rights. (RE.4: Complaint; PageID#61-116).[3] She alleged

---

[3] Ms. Woodruff also named the City of Detroit as a party in the complaint. The district court entered an order of dismissal as to Ms. Woodruff's claims against the City of Detroit on November 6, 2024. (RE.24: Order; PageID#747-

federal and state claims of false arrest and imprisonment, and malicious prosecution, as well as state-law claims of intentional infliction of emotional distress and for violation of Michigan's Elliot Larsen Civil Rights Act. (*Id.*).

Following the filing of Ms. Woodruff's action, Detroit's police chief issued a statement blaming "poor investigative work," and not the use of the department's facial recognition technology, for Ms. Woodruff's arrest. (RE.37-1: Article; PageID#1028-1030). Officer Oliver later admitted at her deposition that the police chief's news report indicated that she should have performed more investigative work rather than submit a warrant based solely on a facial recognition search result. (RE.23-25: Oliver Dep, at 118; PageID#584).

The parties took the depositions of various witnesses during the course of discovery, including the deposition of Officer Oliver. (RE.23-25: Oliver Dep; PageID#467-634). Officer Oliver testified that she spoke with the clerk at the BP gas station after Mr. Walker reported that a woman dropped off Mr. Walker's cellphone at the gas station. (*Id.*, at 19-21; PageID#485-487). The clerk indicated that she had previously seen the woman in the area and that the woman frequented the gas station, but she stated that she did not know the woman's name. (*Id.*).

Officer Oliver testified that after Mr. Walker identified Ms. Woodruff in the

748). That claim is not part of this appeal.

14

photo lineup as the woman he was with on January 29, 2023, she again reviewed Ms. Woodruff's criminal history and started her investigator's report for the warrant packet. (*Id.*, at 36-37; PageID#502-503). She testified that Mr. Walker's identification of Ms. Woodruff as the woman he was with on January 29, 2023 was "enough" to establish probable cause that she was an accessory to carjacking. (*Id.*, at 89, 131-135; PageID#555, 597-601). She stated, however, that Mr. Walker had indicated to her that he was possibly drugged the night of the carjacking. (*Id.*, at 14-15, 76, 122-123; PageID#480-481, 542, 588-589).

She admitted that she did not show Ms. Woodruff's current driver's license photo to Mr. Walker or to the clerk at the BP gas station to confirm the identification of the female suspect before requesting a warrant for Ms. Woodruff's arrest. (*Id.*, at 37-38; PageID#503-504). She also admitted that, following his arrest, Mr. White was not shown Ms. Woodruff's photograph after he identified the female suspect at the gas station as "Trinidad." (*Id.*, at 110-117; PageID#576-583).

Officer Oliver also testified that once she observed Ms. Woodruff during the February 16, 2023 interview following Ms. Woodruff's arrest, she knew that Ms. Woodruff was not the suspect seen on the video because the suspect was not pregnant. (*Id.*, at 44-45, 92; PageID#510-511, 558). She also admitted that Ms. Woodruff had a tattoo while the suspect in the case did not have a tattoo. (*Id.*, at 49,

57; PageID#515, 523). She testified that she asked Ms. Woodruff about her tattoos during the interview "to further clear her, to make it known that she was not the person from [the] video." (*Id.*, at 42; PageID#508).

She also testified that after she spoke with Ms. Woodruff following her arrest, she contacted her superior officer and attempted unsuccessfully to contact the prosecutor's office but there "wasn't much I could do at that moment because there was a valid warrant for her then." (*Id.*, at 45-48, 92; PageID#511-514, 558). She indicated that once someone with a felony warrant is apprehended, neither she nor anyone in her direct chain of command have the authority to unilaterally release them, and only a prosecutor or judge could do so. (*Id.*, at 93-94; PageID#559-560). She therefore brought Ms. Woodruff back to a jail cell after her interview "[b]ecause I had to." (*Id.*, at 47; PageID#513).

Officer Oliver testified that she contacted the magistrate that afternoon in an attempt to get the case against Ms. Woodruff dismissed, but was informed by the magistrate that a prosecutor or a judge was needed to dismiss the charges. (*Id.*, at 96-99; PageID#562-565). She also contacted prosecutor Garrett Garcia the following day and advised him of the situation. (*Id.*, at 99; PageID#565). The prosecutor indicated that he would "look into it" but did not indicate that he would dismiss the case against Ms. Woodruff. (*Id.*, at 61-64, 99; PageID#527-530, 565).

Officer Oliver also admitted that she did not immediately return Ms. Woodruff's cellphone because she needed the phone "to see her whereabouts to make sure or to further point out that she was nowhere near the scene." (*Id.*, at 55-57, 99-101; PageID#521-523, 565-567). She stated that by requesting the warrant, she was "trying to clear her even more." (*Id.*, at 57; PageID#523). She spoke with her supervisors and was told that she could continue the investigation in such a way that she could return Ms. Woodruff's phone, which she did that same day. (*Id.*, at 101-102, 144-145; PageID#567-568, 610-611).

When asked about the warrant request she prepared for Ms. Woodruff's cellphone records on February 18, 2023, Officer Oliver admitted that she did not include in the warrant request the fact that Ms. Woodruff was pregnant and had a tattoo that the female suspect did not have, characteristics that were inconsistent with the suspect. (*Id.*, at 60-61; PageID#526-527). She conceded that the search warrant was "maybe a copy and paste from my investigator's report" and that she should have put more or different information in the search warrant, but she maintained that the warrant was requested to show that Ms. Woodruff "was not near the scene to clear her." (*Id.*, at 60-61, 103; PageID#526-527, 569). She testified that although she had the search warrant signed by a judge, she did not execute the search warrant because she believed that the case against Ms. Woodruff would be dismissed at the

17

preliminary examination. (*Id.*, at 62-63, 103-105; PageID#528-529, 569-571).

Officer Oliver filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56 seeking dismissal of all of Ms. Woodruff's claims against her. (RE.23: Defendant's Motion for Summary Judgment; PageID#321-746). She argued in relevant part that dismissal was proper as to Ms. Woodruff's false arrest/false imprisonment claims, malicious prosecution claims, and intentional infliction claims on the ground that probable cause existed for her arrest and she was entitled to qualified immunity. (*Id.*). She also sought dismissal of the malicious prosecution claims on grounds that the criminal proceedings were voluntarily dismissed and/or because there was no evidence that she acted with malice. (*Id.*). She additionally argued that dismissal was proper as to the intentional infliction claim because her conduct was not extreme or outrageous and Ms. Woodruff could not show intent or recklessness. (*Id.*).

Ms. Woodruff filed a cross motion for partial summary judgment, seeking judgment in her favor on her state and federal claims of false arrest and false imprisonment and malicious prosecution. (RE.25: Plaintiff's Motion for Summary Judgment; PageID#749-781). She sought judgment in her favor as to her claims for false arrest/false imprisonment and malicious prosecution because Officer Oliver lacked probable cause to request a warrant for her arrest. (*Id.*).

Ms. Woodruff also filed a response to Officer Oliver's motion for summary judgment. (RE.29: Plaintiff's Response; PageID#848-877).[4] She argued that Officer Oliver was not entitled to qualified immunity as to her false arrest/false imprisonment claims because Officer Oliver lacked probable cause to arrest her due to her failure to conduct a proper police investigation. (*Id.*, at 10-17; PageID#861-868). She also argued that questions of fact precluded dismissal of her malicious prosecution claims, which were based on Officer Oliver's improper actions with respect to the criminal investigation, which influenced the initiation of charges against her without the requisite probable cause and resulted in Ms. Woodruff's continued detention. (*Id.*, at 17-22; PageID#868-873). She also argued that questions of fact precluded dismissal

---

[4] The district court sealed various exhibits that were filed with defendant's motion for summary judgment, plaintiff's motion for partial summary judgment, and plaintiff's response to defendant's motion for summary judgment, on grounds that the exhibits were not in compliance with the court rules. (RE.60: Order Sealing Exhibits; PageID#1783-1785). The court ordered counsel to re-submit the filings with the court. (*Id.*). Defendant filed corrected exhibits for her motion for summary judgment (RE.61: Defendant's Corrected Exhibits for Motion; PageID#1786-1827; RE.62: Defendant's Corrected Exhibits for Motion; PageID#1828-1937). Plaintiff also filed corrected exhibits for her motion for partial summary disposition (RE.64: Plaintiff's Corrected Exhibits for Motion; PageID#1940-1984), and for her response to defendant's motion for summary judgment (RE.65: Plaintiff's Corrected Exhibits for Response: PageID#1985-1990; RE.67: Plaintiff's Corrected Exhibits for Response; PageID#1993-1996).

of her intentional infliction claim. (*Id.*, at 22-25; PageID#873-876).[5]

Officer Oliver filed a response to Ms. Woodruff's motion for partial summary judgment. (RE.30: Defendant's Response; PageID#883-912). Officer Oliver maintained that she was entitled to dismissal as to Ms. Woodruff's claims for false arrest/false imprisonment and malicious prosecution because she had probable cause to request an arrest warrant. (*Id.*). She attached to her response a report authored by her policing practices expert, Steven L. Johnson. (RE.30-2: Johnson Report; PageID#913-927). Mr. Johnson opined that the Detroit Police Department's Crime Intelligence Unit acted appropriately when issuing an investigative lead based on images submitted into the department's facial recognition system, which in conjunction with the subsequent eyewitness identification led to the arrest of Ms. Woodruff. (*Id.*).

Both Officer Oliver and Ms. Woodruff filed reply briefs in support of their respective motions for summary judgment. (RE.31: Defendant's Reply; PageID#928-934; RE.37: Plaintiff's Reply; PageID#1018-1439). Notably, Ms. Woodruff attached the deposition of, and a report authored by, her policing practices expert, Timothy Dixon, to her reply brief. (RE.37-1: Dixon Dep; PageID#1034-1243; RE.37-1: Dixon

---

[5] Ms. Woodruff indicated in her response to the motion for summary judgment that she was no longer pursuing her claim under the Elliot-Larsen Civil Rights Act. (RE.29: Plaintiff's Response; PageID#851).

Report; PageID#1421-1439).

Mr. Dixon indicated that Officer Oliver deviated from generally accepted policing practices when she obtained an arrest warrant for Ms. Woodruff. (*Id.*). Specifically, he opined that Officer Oliver failed to follow the Detroit Police Department Facial Recognition Policy, which dictates that the result of a facial recognition search is to be considered only an investigative lead and "is not to be considered a positive identification of any subject." (RE.37-1: Dixon Dep, at 67-70; PageID#1100-1103; 37-1: Expert Report, at 12-13; PageID#1433-1434). He opined that Officer Oliver should never have included Ms. Woodruff in the photo lineup given the fact that she was only identified through a facial recognition search:

> A. I think the idea that we're able to view the person period, and had she, again, adhered to ordinary policing practices found out who Ms. Woodruff was, that she would have known that it wasn't her, and she might not have even attempted to get a warrant.
>
> So I think it's -- I think it's a twofold issue, not whether it should have been in the warrant, but there shouldn't have been a warrant for Ms. Woodruff in the first place. She shouldn't have been placed in the photo array. She should have been excluded, and the officer didn't do that.
>
> She instead treated the lead, okay, as a suspect, and she didn't distinguish between the two. And she continues on to the point that she says things that are just verifiably, demonstrably not true in the warrant. So the idea should she have put that in the warrant, she shouldn't have applied to the warrant.

(RE.37-1: Dixon Dep, at 122-123; PageID#1155-1156).

Q. And do you believe that OIC Oliver should have done other things to determine who this particular female was?

A. Yes. I agree that the policy says it's a lead, that's not probable cause for arrest, and I think I testified to the other counsel and I wrote in my report that yeah, more was required for Officer Oliver to make that determination, to even put her in a photo array, okay, and also to find out if she had the ability and the opportunity to commit this crime.

I think that that's the problem, that she didn't, and she also put things in there attributing them to Ms. Woodruff that just were not true.

(*Id.*, at 126-127; PageID#1159-1160).

Mr. Dixon further opined that Officer Oliver failed to follow standard procedures when she identified Ms. Woodruff as the suspect in the arrest warrant without conducting a full investigation to verify that Ms. Woodruff had the opportunity or ability to commit the crime, particularly given the unreliability of the victim's identification of Ms. Woodruff as the suspect. (RE.37-1: Dixon Dep, at 14-27, 57-65, 68, 71-73, 98-99, 108, 127-131, 164-165; PageID#1047-1060, 1090-1098, 1101, 1104-1106, 1131-1132, 1141, 1160-1164, 1197-1198; RE.37-1: Expert Report, at 11-17; PageID#1432-1438). He testified that as a result of Officer Oliver's failures to follow procedures, she improperly included information in the warrant request regarding Ms. Woodruff that misled others into believing that Ms. Woodruff was the suspect, which resulted in her improper arrest. (*Id.*, at 64, 122, 157, 160-161, 179-181; PageID#1097, 1155, 1190, 1193-1194, 1212-1214).

After briefing was completed, Officer Oliver submitted an affidavit of Jamal Hamood, a Master Sergeant with the Detroit Police Department. (RE.59-2: Hamood Affidavit; PageID#1777-1782). Sergeant Hamood attested to the policies and procedures of the Detroit Police Department in February 2023 with respect to the use of facial recognition technology and photo lineups. (*Id.*). He attested that department policy did not require that an investigating officer identify an independent basis, aside from an investigative lead provided by the Crime Intelligence Unit derived from the use of facial recognition technology, to present a photo lineup to a victim or eyewitness "nor to established sufficient probable cause to present a Warrant Request to" the prosecuting attorney's office. (*Id.*, ¶6(a)(iv); PageID#1779). This requirement instead took effect in August of 2023. (*Id.*).

The district court held hearings on the cross motions for summary judgment on April 16, 2025 and April 17, 2025. (RE.82: Tr. 4/16/25: PageID#2317-2413; RE.83: Tr. 4/17/25: PageID#2414-2423). At the April 16, 2025 hearing, the district court heard arguments from the parties, as well as from counsel representing the American Civil Liberties Union (ACLU). (*Id.*). The district court requested that counsel return the following day, at which time the district court requested clarification and supplemental information regarding several points that arose during the April 16, 2025 hearing. (RE.83: Tr. 4/17/25, at 3-9: PageID#2416-2422).

The district court issued an order on August 5, 2025, granting defendant's motion for summary judgment and denying Ms. Woodruff's motion for partial summary judgment. (RE.78: Order; PageID#2245-2293). In that order, the district court dismissed the false arrest and imprisonment claims, rejecting Ms. Woodruff's claim that Officer Oliver's arrest warrant lacked sufficient indicia of probable cause. (*Id.*, at 23-25; PageID#2267-2269). The district court also rejected Ms. Woodruff's argument that Officer Oliver had a duty to conduct additional investigation before seeking an arrest warrant, holding that no such duty exists "when she was not aware of exculpatory evidence." (*Id.*). The district court further rejected Ms. Woodruff's argument that Officer Oliver made material false statements or omissions in her affidavit in support of the warrant request, holding that Ms. Woodruff failed to demonstrate that the statements or omissions were material and/or knowing and deliberate "or displayed a reckless disregard for the truth." (*Id.*, at 26-30; PageID#2270-2274). The district court also rejected Ms. Woodruff's argument that there was no probable cause to arrest a female suspect at all because the female suspect's actions were not criminal. (*Id.*, at 30-32; PageID#2274-2276). The district court therefore concluded that dismissal was proper as Ms. Woodruff's false arrest and imprisonment claims:

For the reasons set forth above, the Court grants summary judgment to

Defendant regarding Count I because Plaintiff has not established that Defendant violated her statutory or constitutional rights, even viewing the record in the light most favorable to Plaintiff. Plaintiff's arrest and subsequent detention are troubling for many reasons. However, the arguments Plaintiff sets forth to avoid summary judgment are not viable under current law.

The Court applies the same analysis to Plaintiff's state-law false arrest and imprisonment claims. "To prevail on a [Michigan state law] claim of false arrest or false imprisonment, a plaintiff must show that the arrest was not legal, i.e., the arrest was not based on probable cause." *Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1, 18 (2003). Again, Plaintiff has not demonstrated that her arrest was not based on probable cause, even viewing the record in the light most favorable to her. As such, her state-law false arrest and imprisonment claims are also dismissed.

(RE.78: Order, at 33; PageID#2277).

The district court also held that dismissal was proper as to Ms. Woodruff's federal and state malicious prosecution claims. (*Id.*, at 40-46; PageID#2284-2290). The district court concluded that a reasonable jury could not find that Officer Oliver knowingly provided false information in her investigatory materials, nor could Officer Oliver's actions after Ms. Woodruff's arrest be reasonably seen as "aiding" the decision to prosecute when she attempted to secure Ms. Woodruff's release, such that her federal malicious prosecution claim failed. (*Id.*, at 40-43; PageID#2284-2287). The district court further held that Ms. Woodruff failed to meet her burden regarding qualified immunity because she failed to present a case with a similar fact

pattern such that Officer Oliver was on notice that her conduct in failing to inform the prosecutor of Ms. Woodruff's innocence was unconstitutional. (*Id.*, at 43-44; PageID#2287-2288). The district court also held that Ms. Woodruff could not establish a state law malicious prosecution claim because she failed to establish that Officer Oliver's arrest warrant lacked probable cause. (*Id.*, at 44-46; PageID#2288-2290).

The district court also dismissed Ms. Woodruff's state law based intentional infliction of emotional distress claim. (*Id.*, at 47-49; PageID#2291-2293). The district court held that despite plaintiff's claims that Officer Oliver used an eight-year-old photograph in the photo lineup and failed to conduct additional investigation before seeking an arrest warrant, because plaintiff failed to establish that Officer Oliver lacked probable cause for her arrest, she cannot "as a matter of law" sustain an intentional infliction of emotional distress claim. (*Id.*, at 47; PageID#2291). The district court also held that Officer's Oliver's refusal to return Ms. Woodruff's cellphone "cannot reasonably be construed as extreme and outrageous conduct." (*Id.*, at 47-48; PageID#2291-2292).

## SUMMARY OF THE ARGUMENT

The district court erred in granting summary judgment to Officer Oliver in this §1983 action. Ms. Woodruff established that, for qualified immunity purposes, it was

clearly established prior to 2023 that no arrest should take place without probable cause. *United States v. Davis*, 514 F.3d 596, 607 (6th Cir. 2008). Contrary to the district court's holding, Officer Oliver lacked probable cause for Ms. Woodruff's arrest. The district court's grant of summary judgment as to Ms. Woodruff's false arrest/imprisonment claims should therefore be reversed.

The district court also erred in granting summary judgment to defendant as to Ms. Woodruff's federal and state malicious prosecution claims. Given the totality of the circumstances, there is a question of fact as to the existence of probable cause in bringing the charges against her. This Court has held in numerous prior cases that the question of probable cause in a §1983 action is for the jury to decide unless there is only one reasonable determination possible. The district court's order granting summary judgment on this aspect of Ms Woodruff's claims should therefore be reversed.

Finally, the district court erred in granting summary judgment as to Ms. Woodruff's intentional infliction of emotional distress claim. The district court erred in holding that Ms. Woodruff could not show that Officer Oliver's misconduct was "extreme and outrageous."

## ARGUMENT

### I.     STANDARD OF REVIEW

This Court reviews a district court's decision on a motion for summary judgment de novo, reviewing facts in the light most favorable to the nonmovant. *Foster v. Patrick*, 806 F.3d 883, 886 (6th Cir. 2015). Summary judgment is only appropriate if the record shows that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### II.     THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT AS TO MS. WOODRUFF'S FEDERAL AND STATE FALSE ARREST/FALSE IMPRISONMENT CLAIMS.

The district court erred in granting summary judgment as to Ms. Woodruff's federal and state false arrest/false imprisonment claims.

#### A.     Ms. Woodruff's Federal False Arrest/False Imprisonment Claims.

A false arrest/false imprisonment claim under federal law requires a plaintiff to prove that there was a lack of probable cause to arrest the plaintiff. *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010); *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005); *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999). It is clearly established that arrest without probable cause violates the Fourth Amendment.

This Court has repeatedly stressed that in an action founded on §1983, the existence of probable cause "presents a jury question, unless there is only one reasonable determination possible." *Klein v. Long,* 275 F.3d 544, 550 (6th Cir. 2002); *see also Parsons v. City of Pontiac,* 533 F.3d 492, 501 (6th Cir. 2008); *Wilson v. Morgan*, 477 F.3d 326, 334 (6th Cir. 2007).

This Court in *Gardenhire v. Schubert*, 205 F.3d 303 (6th Cir. 2000) described the central question to be addressed in determining whether summary judgment is appropriate in a §1983 action which hinges on the question of probable cause:

> Here, viewing the facts in a light most favorable to the [plaintiffs], we must determine whether a jury could conclude that a reasonable officer could have believed that the [plaintiffs] had probably committed or were committing a crime.

205 F.3d at 315; *see also Parsons*, 533 F.3d at 501. Thus, if a "reasonable jury could find that [defendant] did not have probable cause, based on the totality of information he had at the time . . ." summary judgment must be denied. 205 F.3d at 318.

Contrary to the district court's holding, Ms. Woodruff created a question of fact as to whether Officer Oliver had probable cause for Ms. Woodruff's arrest based upon Mr. Walker's identification of Ms. Woodruff. While a law enforcement officer is entitled to rely on an eyewitness identification to establish adequate probable cause with which to sustain an arrest, it is well established that an eyewitness identification

will constitute sufficient probable cause "unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation." *Ahlers*, 188 F.3d at 370.

Here, there were multiple reasons to question Mr. Walker's identification of Ms. Woodruff as the female suspect in the carjacking. Mr. Walker admitted to Officer Oliver that he had been drinking the night of that carjacking and indicated that he may have been drugged prior to the incident. (RE.70-5: Warrant Request: PageID#2028-2032). He also initially failed to inform Officer Oliver that he and the female suspect had engaged in sexual intercourse the night of the incident. (*Id.*). Additionally, the photograph that Mr. Walker picked of Ms. Woodruff out of the photo lineup was 8 years old and therefore not at all a current photograph of Ms. Woodruff, further undermining the accuracy of his eyewitness identification.

While the district court indicated that there was no evidence that Officer Oliver was aware that the photograph was 8 years old (RE.78: Order, at 27; PageID#2271), the district court acknowledged that Officer Oliver led the investigation. (RE.78: Order, at 21; PageID#2265). Officer Oliver therefore should have been cognizant of the facts that formed the basis for Mr. Walker's identification of Ms. Woodruff, including the fact that the photograph utilized in the photo array was not a current

photograph of Ms. Woodruff. Given Mr. Walker's intoxication and apparent inability to recall the events of the evening, as well as the outdated nature of the photograph of Ms. Woodruff that Mr. Walker selected out of the photo lineup, there was an apparent reason for Officer Oliver to believe that Mr. Walker was "in some fashion mistaken regarding his recollection." *Ahlers*, 188 F.3d at 370.

Because Mr. Walker's eyewitness identification was faulty, his identification of Ms. Woodruff failed to constitute sufficient probable cause and Officer Oliver could not rely upon his eyewitness identification to support an arrest warrant. *Ahlers*, 188 F.3d at 370. Officer Oliver instead was required to conduct additional investigation in order to establish probable cause for an arrest warrant against Ms. Woodruff. She simply could not rely upon Mr. Walker's identification of Ms. Woodruff as the basis for probable cause because the identification was not reasonably trustworthy information. *Weser v. Goodson*, 965 F.3d 507, 514 (6th Cir. 2020).

This was confirmed by Ms. Woodruff's policing practices expert, Timothy Dixon, who opined that Officer Oliver failed to follow standard procedures when she identified Ms. Woodruff as the suspect in the arrest warrant without conducting a full investigation to verify that Ms. Woodruff had the opportunity or ability to commit the crime, particularly given the unreliability of the victim's identification of Ms.

Woodruff as the suspect. (RE.37-1: Dixon Dep, at 14-27, 57-65, 68, 71-73, 98-99, 108, 127-131, 164-165; PageID#1047-1060, 1090-1098, 1101, 1104-1106, 1131-1132, 1141, 1160-1164, 1197-1198; RE.37-1: Expert Report, at 11-17; PageID#1432-1438).

The need to conduct further investigation is particularly significant here given that minimal further investigation would have exonerated Ms. Woodruff. There is no question that after Officer Oliver received the investigative lead from the facial recognition match, Ms. Woodruff's photograph was included in the photo lineup. Officer Oliver ended her investigation once Mr. Walker picked Ms. Woodruff from the photo lineup, despite the lack of a trustworthy identification. (RE.23-25: Oliver Dep, at 30; PageID#496).

In *Weser*, the plaintiff in that case argued that "probable cause does not exist when a minimal further investigation would have exonerated the suspect." *Weser*, 965 F.3d at 514, citing *Kehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999). Similarly here, Officer Oliver failed to conduct a minimal further investigation, which would have exonerated Ms. Woodruff and established a lack of probable cause for her arrest. Had Officer Oliver interviewed Ms. Woodruff regarding the robbery and carjacking, she would have immediately known – much as she did when she saw Ms. Woodruff after her arrest – that Ms. Woodruff was not the female suspect. She would have seen that

32

Ms. Woodruff was eight months pregnant and therefore was not the woman "Trinidad" that Mr. Walker had been with on the night of the carjacking.

Not only did Officer Oliver not interview Ms. Woodruff, but she also failed to investigate Ms. Woodruff's identification as the female suspect with any of the other witnesses identified in the course of her investigation. Officer Oliver failed to show Ms. Woodruff's photograph to the gas station clerk who claimed to be familiar with the female who returned Mr. Walker's cellphone to the gas station. The gas station security video showed that the gas station clerk allowed the female to enter behind the bullet proof glass when she returned Mr. Walker's cellphone, where they engaged in an extensive conversation – demonstrating that there was significant familiarity between the two individuals. (RE.64-5: Video; PageID#1949). Yet Officer Oliver made no attempt to confirm Ms. Woodruff's identification as the woman seen by the gas station clerk.

Officer Oliver similarly failed to show Ms. Woodruff's photograph to Mr. White, the male arrestee who identified the female named "Trinidad" from the gas station security video, in order to determine whether Ms. Woodruff was the person he knew as "Trinidad." Mr. White also indicated that he had "Trinidad's" cellphone number stored in his phone, as well as access to her Facebook page, which Officer Oliver failed to retrieve in order to determine whether there was any connection

33

between "Trinidad" and Ms. Woodruff. Any one of these actions would have led to Ms. Woodruff's complete exoneration as the female suspect.

Since a minimal further investigation would have exonerated Ms. Woodruff, probable cause did not exist. Viewing the evidence in the light most favorable to Ms. Woodruff, as the district court was required to do at the summary judgment stage, there is sufficient evidence to create a jury question that Officer Oliver lacked probable cause for Ms. Woodruff's arrest. *Foster v. Patrick*, 806 F.3d 883, 886 (6th Cir. 2015) (court must review facts in the light most favorable to the nonmovant); *Ahlers*, 188 F.3d at 369 (holding that credibility judgments and weighing of the evidence is prohibited during the consideration of a motion for summary judgment). The district court therefore erred in granting summary judgment as to Ms. Woodruff's federal false arrest/false imprisonment claim.

Ms. Woodruff also created a question of fact as to whether Officer Oliver knowingly made materially false statements or omissions in the arrest warrant in order to manufacture probable cause. It is well established that while an arrest based on a facially valid warrant approved by a magistrate provides a complete defense to a false arrest/imprisonment claim, a plaintiff may maintain a claim if, in order to procure the warrant, the officer "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood"

and "such statements or omissions [we]re material, or necessary, to the finding of probable cause." *Sykes*, 625 F.3d at 305.

Here, Officer Oliver omitted several key facts from the arrest warrant request, which were material to the finding of probable cause. (RE.70-5: Warrant Request; PageID#2028-2046). First, Officer Oliver failed to document that the photograph of Ms. Woodruff that was placed in the photo lineup was not a current photograph but rather was an outdated, eight year old photograph. She also failed to document that, according to Ms. Woodruff's criminal history record, she had a tattoo on her right arm, which was neither described by the victim, Mr. Walker, nor seen on the gas station security video. She also omitted from the warrant the fact that Mr. White stated that he was Facebook friends with "Trinidad" and that her Facebook name was "Trinidad Trinity," yet Ms. Woodruff's Facebook name was not "Trinidad Trinity" – information she obtained from the Crime Intelligence Unit prior to requesting the arrest warrant. (RE.61-3: Facial Recognition Document; PageID#1795).

Officer Oliver also included several materially false statements in the arrest warrant request. (RE.70-5: Warrant Request; PageID#2028-2046). She included in the warrant request that she observed "Defendant Woodruff" pulling and tugging on Mr. Walker while he was in his vehicle at the gas station, and "Defendant Woodruff" was observed on video taking an item from Mr. Walker, and that Mr. Walker stated

that he believed he may have been drugged by "Defendant Woodruff." (*Id.*). These statements, however, were false and misleading because a person reading these statements would have believed that Officer Oliver had personally confirmed that Ms. Woodruff was in fact the person seen in the gas station security video when she had not.

Had Officer Oliver not omitted the relevant information from the arrest warrant request and properly removed the materially false statements from the warrant request, probable cause would not have been established. Viewing the evidence in the light most favorable to Ms. Woodruff, a question of fact exists as to whether Officer Oliver made materially false statements or omissions in the arrest warrant in order to manufacture probable cause. *Ahlers*, 188 F.3d at 369.

### B. Ms. Woodruff's State Law False Arrest/False Imprisonment Claim.

The district court also erred in dismissing Ms. Woodruff's state law false arrest/false imprisonment claim. To prevail on a claim of false arrest or false imprisonment under Michigan law, a plaintiff must show that the arrest was not legal, i.e., it was not based on probable cause. *Peterson Novelties, Inc. v. City of Berkley*, 672 N.W.2d 351, 362 (Mich. App. 2003).

The district court held below that Ms. Woodruff could not prevail on her state

law claim for false arrest/false imprisonment because she failed to demonstrate that her arrest was not based on probable cause. (RE.78: Order, at 33; PageID#2277). As set forth above, however, the district court erred in determining that Ms. Woodruff's arrest was based on probable cause. Viewing the evidence in the light most favorable to Ms. Woodruff, the evidence demonstrates a question of fact exists as to whether probable cause existed for Ms. Woodruff's arrest, such that the district court erred in granting summary judgment as to this claim.

### III. THE DISTRICT COURT ALSO ERRED IN GRANTING SUMMARY JUDGMENT AS TO MS. WOODRUFF'S FEDERAL AND STATE MALICIOUS PROSECUTION CLAIMS.

The district court also erred in granting summary judgment as to Ms. Woodruff's federal and state malicious prosecution claims.

### A. Ms. Woodruff's Federal Malicious Prosecution Claim.

The district court ruled that Officer Oliver was entitled to qualified immunity with respect to Ms. Woodruff's federal malicious prosecution claim under §1983, which was premised on a violation of the Fourth Amendment. (RE.78: Order, at 40-44; PageID#2284-2288). This was error.

For her Fourth Amendment malicious prosecution claim, Ms. Woodruff had to show that (1) defendant "made, influenced, or participated in the decision to

prosecute," (2) there was "a lack of probable cause for the criminal prosecution," (3) Ms. Woodruff suffered a resulting "deprivation of liberty," and (4) the criminal proceeding was resolved in her favor. *Sykes*, 625 F.3d at 308-309.

Before proceeding to an analysis of the elements of the claim, several preliminary points must be stressed. First, as in every other case in which summary judgment is sought, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir. 2009); *Harris v. Bornhorst,* 513 F.3d 503, 509 (6th Cir. 2008) ("The court must credit all evidence presented by the nonmoving party and draw all justifiable inferences in that party's favor."). Moreover, in deciding a motion for summary judgment, "the judge's function is not himself to weigh the truth of the matter, but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249; *Martin*, 548 F.3d at 410; *Ahlers*, 188 F.3d at 369.

Here, the district court first erred in holding that Ms. Woodruff's malicious prosecution claim failed because a reasonable jury could not find that Officer Oliver "made, influenced, or participated in the decision to prosecute" Ms. Woodruff. (RE.78: Order, at 40; PageID#2284). Contrary to the district court's conclusion, Officer Oliver made, influenced, and participated in the decision to prosecute Ms.

Woodruff when she requested the warrant for Ms. Woodruff's arrest, which led to her criminal charges. And as recognized by the district court, it is well established that an officer may be liable for malicious prosecution if the officer provided false information in their arrest warrant request and investigatory materials, if the false information was knowingly included and it was reasonably foreseeable that these falsehoods could ultimately influence a prosecutor's decision to charge the plaintiff. *Sykes*, 625 F.3d at 314-315.

In dismissing Ms. Woodruff's claim, the district court reiterated its holding that a reasonable jury could not find that Officer Oliver knowingly provided false information in her investigatory materials, relying upon its analysis with respect to the false arrest/false imprisonment claim. (RE.78: Order, at 41; PageID#2285). For all of the reasons set forth above, however, the district court's ruling in this regard was incorrect. Again, Officer Oliver included false information in the arrest warrant indicating that "Defendant Woodruff" was seen on the gas station security video interacting with the victim, which mislead the reader into believing that Officer Oliver had actually confirmed that Ms. Woodruff was the one seen on the video when she in fact had not. Officer Oliver also failed to indicate in the warrant request that the eyewitness identification of Ms. Woodruff was based upon an eight year old photograph, and omitted the fact that Ms. Woodruff's criminal history report

indicated that she had a tattoo on her right arm, which was not described by the victim or seen on the gas station security video. She also omitted from the warrant the fact that Mr. White identified the female suspect at the gas station as "Trinidad" and indicated that Trinidad's Facebook name was "Trinidad Trinity," which was not Ms. Woodruff's Facebook name. (RE.61-3: Facial Recognition Document; PageID#1795). Given this evidence, a question of fact exists as to whether Officer Oliver made, influenced, or participated in the decision to prosecute Ms. Woodruff.

The district court also held that Officer Oliver's actions after Ms. Woodruff's arrest "cannot reasonably be seen as 'aiding' the decision to prosecute." (RE.78: Order, at 41-42; PageID#2285-2286). The district court pointed to the evidence provided by Officer Oliver that she attempted to secure Ms. Woodruff's release after she was brought into custody. (*Id.*). The difficulty with this reasoning, however, is that the district court wholly discounted the evidence demonstrating that Officer Oliver failed to make any contact with the prosecuting attorney following Ms. Woodruff's arrest. (*Id.*).

The evidence demonstrates that, on February 16, 2023, despite knowing that Ms. Woodruff was not involved in the carjacking of Mr. Walker, Officer Oliver directed Ms. Woodruff back to the holding cell, after which she was arraigned on carjacking and armed robbery charges in the 36th District Court. (RE.23-29: Docket

Entries; PageID#642). Ms. Woodruff entered a plea of not guilty and a probable cause conference was scheduled for February 27, 2023. (*Id.*). She received a $100,000 personal bond and was instructed to have no contact with the victim, Mr. Walker. (*Id.*).

And despite knowing that Ms. Woodruff was not the female suspect in the carjacking, Officer Oliver prepared a warrant request for Ms. Woodruff's cellphone records on February 18, 2023, two days after her arrest, which wholly failed to include the fact that Ms. Woodruff was eight months pregnant and could not match the physical characteristics of the female suspect. (RE.64-19: Warrant Request; PageID#1974-1976). She submitted the warrant request to another prosecutor, Joe Kurly, who was not familiar with the case, and ultimately had the warrant signed by Wayne County Circuit Judge Parentis Edwards. (RE.64-20: Search Warrant; PageID#1977-1978).

Ms. Woodruff appeared for her probable cause conference in the 36th District Court on February 27, 2023, at which time Ms. Woodruff's attorney expressed his belief that the prosecutor was dismissing the matter. (RE.23-31: Tr. 2/27/23, at 3-4; PageID#647-648). The prosecuting attorney, Alexander Kerker, however, stated in response to the defense attorney's statement, "I don't have any information on that." (*Id.*). The judge therefore scheduled Mr. Woodruff's preliminary examination for

March 7, 2023. (*Id.*). The criminal charges against Ms. Woodruff were not dismissed until she appeared for her preliminary examination on March 7, 2023. (RE.23-29: Docket Entries; PageID#643).

Contrary to the district court's conclusion, this evidence creates a question of fact as to whether Officer Oliver "aided" the decision to prosecute. A reasonable jury could conclude that Officer Oliver did not in fact contact the prosecuting attorney following Ms. Woodruff's arrest and in fact took steps to continue the charges against Ms. Woodruff by obtaining a search warrant for her cellphone.

In granting summary judgment to Officer Oliver on Ms. Woodruff's §1983 malicious prosecution claim, the district court made a number of basic errors. As indicated previously, in deciding the motion for summary judgment, the district court was obligated to accept the evidence presented by the plaintiff as true and it was compelled to construe that evidence *and the inferences derived from that evidence* in the light most favorable to the plaintiff in determining the narrow question of whether material issues of fact remained. *Liberty Lobby*, 477 U.S. at 255; *Martin*, 548 F.3d at 410; *Ahlers*, 188 F.3d at 369. Contrary to these cited authorities, the district court weighed the evidence bearing on the existence of probable cause, failed to construe the evidence presented in the light most favorable to plaintiff, and arrived at a determination as a matter of law with respect to probable cause. The trial court's

holding should be reversed.

There also is no merit to the trial court's conclusion that Ms. Woodruff failed to meet her burden regarding qualified immunity. (RE.78: Order, at 43-44; PageID#2287-2288). The district court concluded that Ms. Woodruff failed to present a case with a fact pattern similar enough to the instant case "such that Defendant was on notice that her conduct was unconstitutional." (*Id.*, at 44; PageID#2288).

In reviewing a claim for qualified immunity, this Court follows a two-step inquiry. First, the Court must consider whether the plaintiff has asserted a violation of a known constitutional right. Second, the Court must consider whether the constitutional right was so clearly established at the time in question that a reasonable official in the defendant's position would have known that he was violating the plaintiff's constitutional rights. See *Gregory v. City of Louisville*, 444 F.3d 725, 745 (6th Cir. 2006).

Here, for purposes of the qualified immunity analysis, it was clearly established before February 2023 that a person has a right to be free from illegal seizure and prosecution under the Fourth Amendment. *Jackson v. City of Cleveland*, 925 F.3d 793, 825 (6th Cir. 2019). Individuals also have a clearly established Fourth Amendment right to be free from malicious prosecution by a defendant who has "made, influenced, or participated in the decision to prosecute the plaintiff" by

43

"knowingly and recklessly" making false statements that are material to the prosecution either in reports or in affidavits filed to secure a warrant. *Sykes*, 625 F.3d at 308; *Webb v. United States*, 789 F.3d 647, 659-660 (6th Cir. 2015). As such, the district court erred in dismissing Ms. Woodruff's federal malicious prosecution claim where the right to be free from malicious prosecution is clearly established.

### B. Ms. Woodruff's State Law Malicious Prosecution Claim.

In an action for malicious prosecution under Michigan law, the plaintiff has the burden of proving (1) that the defendant has initiated a criminal prosecution against him, (2) that the criminal proceedings terminated in his favor, (3) that the person who instituted or maintained the prosecution lacked probable cause for his action, and (4) that the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice. *Matthews v. Blue Cross & Blue Shield of Michigan,* 572 N.W.2d 603, 609-610 (Mich. 1998).

In Michigan, when a party is sued for malicious prosecution, a jury may infer malice from an absence of probable cause. *See Renda v. International Union,* UAW, 114 N.W.2d 343, 363 (Mich. 1962). Here, for all the reasons set forth above, a jury could find that Officer Oliver did not have probable cause for an arrest warrant. A question of fact therefore exists as to Ms. Woodruff's state law malicious prosecution

claim.

**IV. THE DISTRICT COURT ALSO ERRED IN GRANTING SUMMARY JUDGMENT AS TO MS. WOODRUFF'S INTENSION INFLICTION OF EMOTIONAL DISTRESS CLAIM.**

Finally, the district court erred in dismissing Ms. Woodruff's intentional infliction of emotional distress claim under Michigan law on grounds that the Officer Oliver's conduct was not "extreme and outrageous." (RE.78: Order, at 47-48; PageID#2291-2292).

To establish a prima facie claim of intentional infliction of emotional distress under Michigan law, the plaintiff must present evidence of (1) the defendant's extreme and outrageous conduct, (2) the defendant's intent or recklessness, (3) causation, and (4) the severe emotional distress of the plaintiff." *Walsh v. Taylor,* 689 N.W.2d 506, 517 (Mich. App. 2004). Liability attaches only when a plaintiff can demonstrate that the defendant's conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Walsh*, 689 N.W.2d at 517, quoting *Graham v. Ford,* 604 N.W.2d 713, 716 (Mich. App. 1999).

The test to determine whether a person's conduct was extreme and outrageous is whether recitation of the facts of the case to an average member of the community

"would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Graham*, 604 N.W.2d at 716. In reviewing claims of intentional infliction of emotional distress, it is generally the trial court's duty to determine whether a defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. *Doe v. Mills,* 536 N.W.2d 824, 834 (Mich. App. 1995). Where reasonable minds may differ, the question of whether a defendant's conduct is so extreme and outrageous as to impose liability is a question for the jury. *Linebaugh v. Sheraton Michigan Corp.,* 497 N.W.2d 585, 589 (Mich. App. 1993).

Here, Officer Oliver's conduct would make the average person state that her actions were outrageous. After obtaining an investigative lead from a facial recognition match, Ms. Woodruff's photograph was included in the photo lineup provided to the victim. And despite the fact that the victim admitted that he was drinking alcohol and may have been drugged by the female suspect and had difficulty recalling the events leading up to the carjacking, as well as the fact that the photograph of Ms. Woodruff included in the photo lineup was not at all current, Officer Oliver ended her investigation once Mr. Walker picked Ms. Woodruff from the photo lineup. Had Officer Oliver conducted a minimal investigation she would have discovered that Ms. Woodruff was eight months pregnant and could not have committed the crimes of armed robbery and car jacking.

Instead, due to Officer Oliver's outrageous conduct, Ms. Woodruff was arrested while eight months pregnant for a crime she did not commit. She remained in custody for eleven hours and was taken to St. John Hospital following her release because she was suffering from stomach tightness and pain. (RE.4: Complaint; PageID#109-111). She learned that she was having contractions and she was diagnosed with dehydration and treated with intravenous fluids. (*Id.*).

Given the fact that the identification of Ms. Woodruff was untrustworthy, combined with the fact that it would have been discovered that Ms. Woodruff was not the female suspect had a minimal investigation been conducted, the actions of Officer Oliver are sufficiently extreme and outrageous under the law. The district court's dismissal of Ms. Woodruff's intentional infliction of emotional distress claims should be reversed.

Not only was Officer Oliver's conduct with respect to her investigation leading up to Ms. Woodruff's arrest extreme and outrageous, but her conduct following her arrest was similarly outrageous. On February 17, 2023, the day after Ms. Woodruff was released from custody for crimes that she did not commit, Ms. Woodruff attempted to retrieve her cellphone from Officer Oliver. (RE.64-15: Recording; PageID#1970; RE.41-4: Audio Transcript; PageID#1694-1695). Officer Oliver, however, refused to release the cellphone because she was purportedly still

investigating Ms. Woodruff's involvement in the crimes. (*Id.*). Ms. Woodruff was ultimately allowed to retrieve her cellphone later that day. (RE.64-16: Property Transfer; PageID#1971).

Yet Officer Oliver prepared a warrant request for Ms. Woodruff's cellphone records on February 18, 2023, two days after her arrest. (RE.64-19: Warrant Request; PageID#1974-1976). Officer Oliver did not include in the warrant request the fact that Ms. Woodruff was eight months pregnant and did not match the physical characteristics of the female suspect. (*Id.*). She submitted the warrant request to both the prosecutor and a judge for signature and indicated that she was investigating a crime. (*Id.*; RE.64-20: Search Warrant; PageID#1977-1978).

Given that Officer Oliver knew that Ms. Woodruff was not the female suspect, her conduct in continuing to investigate Ms. Woodruff as a suspect was extreme and outrageous. The district court's decision should be reversed and this matter should be submitted to a jury.

## CONCLUSION

Based on the foregoing, this Court should reverse the district court's August 5, 2025 decision granting summary judgment to defendant Oliver and remand this matter to the district court for further proceedings.

**GRANZOTTO & WITTMANN, P.C.**

**/s/ Mark Granzotto**
**MARK GRANZOTTO  (P31492)**
**BETH A. WITTMANN (P63233)**
Attorneys for Plaintiffs-Appellants
2684 Eleven Mile Road, Suite 100
Berkley, Michigan 48072
(248) 546-4649

**LAW OFFICES OF IVAN L. LAND, P.C.**

**/s/ Ivan L. Land**
**IVAN L. LAND (P65879)**
Attorney for Plaintiffs-Appellants
25900 Greenfield Rd., Suite 210
Oak Park, Michigan 48237
(248) 968-4545

Dated: May 12, 2026.

**CERTIFICATION PURSUANT TO FRAP 32(a)(7)(C)**

Beth A. Wittmann, attorney for plaintiff-appellant, hereby certifies pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure that this brief was typed using the Corel Word Perfect word processing program. That program has a function which can calculate the total number of words contained in a document. According to that program function, there are 10,774 words in this brief.

 /s/ Mark Granzotto
Counsel for Plaintiff-Appellant

# DESIGNATION OF RECORD ON APPEAL

Pursuant to Sixth Circuit Rule 29(c), plaintiff-appellant designates the following filings in the district court for inclusion in the Record on Appeal:

| **Description Of Entry** | **Date Filed** | **RE No.** | **Range** |
|---|---|---|---|
| Complaint | 8/10/23 | 4 | 61-116 |
| Defendant's Motion for Summary Judgment (w/Exhibits) | 11/5/24 | 23 | 321-746 |
| Order | 11/6/24 | 24 | 747-748 |
| Plaintiff's Motion for Partial Summary Judgment | 11/8/24 | 25 | 749-781 |
| Plaintiff's Response to Motion for Summary Judgment | 11/26/24 | 29 | 848-877 |
| Defendant's Response to Motion for Partial Summary Judgment (w/Exhibits) | 11/27/24 | 30 | 883-927 |
| Defendant's Reply Brief | 12/1/24 | 31 | 928-934 |
| Plaintiff's Reply Brief (w/Exhibits) | 12/11/24 | 37 | 1018-1439 |
| Order Sealing Exhibits | 4/9/25 | 60 | 1783-1785 |
| Defendant's Corrected Exhibits for Motion for Summary Judgment | 4/9/25 | 61 | 1786-1827 |
| Defendant's Corrected Exhibits for Motion for Summary Judgment | 4/9/25 | 62 | 1828-1937 |

Plaintiff's Corrected Exhibits

| | | | |
|---|---|---|---|
| for Motion for Partial Summary Judgment | 4/14/25 | 64 | 1940-1984 |
| Plaintiff's Corrected Exhibits for Response to Defendant's Motion for Summary Judgment | 4/14/25 | 65 | 1985-1990 |
| Plaintiff's Corrected Exhibit | 4/15/25 | 67 | 1993-1996 |
| Defendant's Supplemental Brief (w/Exhibits) | 4/22/25 | 70 | 1998-2219 |
| Plaintiff's Response to Supplemental Brief | 4/28/25 | 72 | 2223-2235 |
| Defendant's Reply | 4/29/25 | 73 | 2236-2240 |
| Order | 8/5/25 | 78 | 2245-2293 |
| Judgment | 8/5/25 | 79 | 2294 |
| Notice of Appeal | 8/30/25 | 80 | 2295-2297 |
| Tr. 4/16/25 | 11/11/25 | 82 | 2317-2413 |
| Tr. 4/17/25 | 11/11/25 | 83 | 2414-2423 |

**CERTIFICATE OF SERVICE**

I hereby certify that on May 12, 2026, I electronically filed the foregoing paper with the Clerk of the United States Sixth Circuit Court of Appeals, using the ECF system.

<u>    /s/ Mark Granzotto                        </u>