**CASE NO. 25-1788**

---

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**PORCHA WOODRUFF,**

**Plaintiff-Appellant,**

**-vs-**

**CITY OF DETROIT**

**Defendant,**

**and**

**LASHAUNTIA OLIVER,**

**Defendant-Appellee.**

**On Appeal from the United States District Court**
**for the Eastern District of Michigan Southern Division**

---

# PLAINTIFF-APPELLANT'S REPLY BRIEF ON APPEAL

---

**LAW OFFICES OF**
**IVAN L. LAND, P.C.**

**IVAN . LAND**
**Attorney for Plaintiff-Appellant**
**25900 Greenfield Rd. Suite 210**
**Oak Park, MI 48237**
**(248) 968-4545**

**GRANZOTTO & WITTMANN, P.C.**

**MARK GRANZOTTO**
**BETH A. WITTMANN**
**Attorneys for Plaintiff-Appellant**
**2684 Eleven Mile Road, Suite 100**
**Berkley, Michigan 48072**
**(248) 546-4649**

# TABLE OF CONTENTS

**Page**

INDEX OF AUTHORITIES . . . . . ii

ARGUMENT . . . . . 1

I. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT AS TO MS. WOODRUFF'S FEDERAL AND STATE FALSE ARREST/FALSE IMPRISONMENT CLAIMS . . . 1

II. THE DISTRICT COURT ALSO ERRED IN GRANTING SUMMARY JUDGMENT AS TO MS. WOODRUFF'S FEDERAL AND STATE MALICIOUS PROSECUTION CLAIMS. . . . . 6

A. Ms. Woodruff's Federal Malicious Prosecution Claim . . . . . . 6

B. Ms. Woodruff's State Law Malicious Prosecution Claim . . . . 8

CONCLUSION. . . . . 10

CERTIFICATION PURSUANT TO FRAP 32(a)(7)(C). . . . . 11

DESIGNATION OF RECORD ON APPEAL. . . . . 12

CERTIFICATE OF SERVICE. . . . . 14

## INDEX OF AUTHORITIES

**Page**

**Cases**

*Hinchman v. Moore*,
312 F.3d 198 (6th Cir. 2002). . . . . . . . . . 2

*Renda v. International Union, UAW*,
114 N.W.2d 343 (Mich. 1962). . . . . . . . . . 9

*Schulz v. Gendregske*,
544 Fed.Appx. 620 (6th Cir. 2013). . . . . . . . . . 2

*Sykes v. Anderson*,
625 F.3d 294 (6th Cir. 2010). . . . . . . . . . 1

*Tlapanco v. Elges*,
969 F.3d 638 (6th Cir. 2020). . . . . . . . . . 2

*Vakilian v. Shaw*,
335 F.3d 509 (6th Cir. 2003). . . . . . . . . . 1

*Voyticky v. Vill. of Timberlake, Ohio*,
412 F.3d 669 (6th Cir. 2005). . . . . . . . . . 2

*Weser v. Goodson*,
965 F.3d 507 (6th Cir. 2020). . . . . . . . . . 6

**Sixth Circuit Rules**

Sixth Circuit Rule 32(a)(7)(C) . . . . . . . . . . 11

Sixth Circuit Rule 29(c) . . . . . . . . . . 12

**Statutes**

Elliot-Larsen Civil Rights Act . . . . . . . . . . 9

## ARGUMENT

### I. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT AS TO MS. WOODRUFF'S FEDERAL AND STATE FALSE ARREST/FALSE IMPRISONMENT CLAIMS.

Officer Oliver argues on appeal that because she was not the arresting officer or a member of the team that took Ms. Woodruff into custody, she cannot have violated Ms. Woodruff's Fourth Amendment rights. Defendant's Brief, at 13-14. The difficulty with this argument, however, is that, as held by the district court, physical involvement in the arrest is not required for a false arrest claim. (RE.78:Opinion, at 20-21;PageID#2264-2265).

It is well established that the Fourth Amendment requires that arrest warrants be issued only upon a showing of probable cause. *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003). It is also well established that a plaintiff may prevail on a false arrest claim if the plaintiff proves by a preponderance of the evidence that in order to procure an arrest warrant, the investigating officer "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood" and "such statements or omissions [we]re material, or necessary, to the finding of probable cause." *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010); *Vakilian*, 335 F.3d at 517 ("An investigator may be held liable under

§ 1983 for making material false statements either knowingly or in reckless disregard for the truth to establish probable cause for an arrest."). In other words, a claim of false arrest requires proof that the *arrest itself* lacked probable cause.

This Court has repeatedly recognized that clearly established law provides that a false arrest claim can be brought against not only an arresting officer but also against an officer who swore false statements in a warrant affidavit. See *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005); *Schulz v. Gendregske*, 544 Fed.Appx. 620, 625 (6th Cir. 2013) (holding that "no clearly established law compels the conclusion that officers who neither arrested the plaintiff nor swore false statements in a warrant affidavit can be liable for false arrest."); *Tlapanco v. Elges*, 969 F.3d 638, 652 n.2 (6th Cir. 2020) (holding that investigative officer may be sued for false arrest when officer was responsible for swearing out the affidavit upon which the arrest warrant relied). This is because falsifying facts to establish probable cause to arrest and prosecute an innocent person "is of course patently unconstitutional" and has been so long before Ms. Woodruff's arrest. *Hinchman v. Moore*, 312 F.3d 198, 205-206 (6th Cir. 2002) (denying qualified immunity to officers whom plaintiff alleged had lied in order to manufacture probable cause for her arrest by a Michigan State Trooper.).

In *Hinchman*, the plaintiff argued that there was no probable cause to arrest and

prosecute her for the charge of felonious assault against two officers. In that case, two officers, Dombrowski and Moore, sought to interview Hinchman during a murder investigation. 312 F.3d at 200. The officers drove to Hinchman's home but left after Hinchman declined to speak with them. The officers returned to Hinchman's home and awaited the arrival of an investigative subpoena that we being prepared for service on Hinchman. *Id.* After their arrival, Hinchman exited her home and entered her vehicle and again advised the officers that she did not wish to speak with them. *Id.*

According to Hinchman*,* Officer Moore held onto her car with his hands on the trunk and, upon Hinchman telling him she was leaving, he moved aside. *Id.*, at 200-201. Hinchman then backed her car up while keeping the officers in sight and left the parking lot. *Id.*, at 201. Hinchman maintained that she never struck Officer Moore with her vehicle. *Id.* Officer Moore, however, claimed that Hinchman placed her vehicle in reverse and looked straight up without warning him or otherwise providing him with an opportunity to get out of the way of the car. *Id.* Officer Moore claimed that Hinchman hit him with her vehicle and then drove away. *Id.* The officers requested that a Michigan State Trooper pull Hinchman over, and Trooper Lou Taylor stopped Hinchman's vehicle and arrested her for felonious assault based on the officers recitation of the events. *Id.*

Hinchman was acquitted by a jury on the criminal charge and she subsequently brought suit against the two officers, alleging violations of her Fourth and Fourteenth Amendment rights. *Id.* Hinchman alleged that the defendant officers lied to State Trooper Taylor and to the prosecutors in order to establish probable cause to arrest, imprison, and prosecute her. *Id.*, at 205. The district court granted summary judgment to the defendant officers and this Court reversed, holding that the record failed to establish that probable cause existed to arrest and prosecute Hinchman. *Id.*, at 204.

This Court noted that the facts as related by Hinchman did not establish probable cause to arrest and prosecute her for the crime of felonious assault given Hinchman's testimony that she kept both officers in sight in her rear-view mirror while she backed up. *Id.* This Court found that these facts would not allow a rational fact finder to conclude that the officers' fears of an immediate battery were reasonable "if the remaining facts as presented by Hinchman are true." *Id.*

This Court also rejected the officers' claim that they were entitled to qualified immunity because the "could have believed that probable cause existed for Hinchman's arrest." *Id.*, at 205. This Court recognized that it must "accept as true Hinchman's factual assertions" that any such belief by the officers would have been unreasonable based on her version of the facts and that the officers "lied in order to manufacture probable cause." *Id.* In reversing the grant of summary judgment, this

Court held that "[f]alsifying facts to establish probable cause to arrest and prosecute an innocent person is of course patently unconstitutional and has been so long before the defendants arrested Hinchman." *Id.*, at 205-206.

As in *Hinchman*, Officer Oliver's falsification of facts to establish probable cause to arrest and prosecute Ms. Woodruff is "patently unconstitutional" and has been so "long before" Ms. Woodruff's arrest. 312 F.3d at 205-206.

Defendant's argument that the officer's physical involvement in the arrest is required also raises practical concerns. If defendant's argument were adopted by this Court, officers would be able to lie with impunity in a warrant request but render themselves immune from civil liability by simply requesting another officer execute the warrant. A claim seeking redress for the violation of a plaintiff's constitutional rights should not be so easily defeated. Nor has defendant identified any valid reason to require the officer's physical involvement in the arrest in order to subject the officer to liability for knowingly or recklessly making materially false statements in a warrant request to establish probable cause for an arrest warrant. For all of these reasons, defendant's argument should be rejected.

There is no merit to defendant's argument that probable cause existed here based upon Mr. Walker's eyewitness identification, which Officer Oliver contends she had "no apparent reason" to disbelieve. Defendant's Brief, at 14-15. As set forth

in Ms. Woodruff's brief on appeal, there were multiple reasons to question Mr. Walker's identification of Ms. Woodruff as the female suspect in the carjacking. Plaintiff's Brief, at 29-31. And given the unreliability of the eyewitness identification, Officer Oliver was required to conduct additional investigation before seeking an arrest warrant for a person who was merely suggested as an investigative lead. *Weser v. Goodson*, 965 F.3d 507, 514 (6th Cir. 2020). A *minimal* further investigation by Officer Oliver would have exonerated Ms. Woodruff as the suspect, given that she was eight months pregnant and therefore was not the woman "Trinidad" that Mr. Walker had been with on the night of the carjacking. *Id.* Simply stated, no reasonably competent officer would conclude on these facts that Officer Oliver's actions were lawful here. *Sykes*, 625 F.3d at 308.

## II. THE DISTRICT COURT ALSO ERRED IN GRANTING SUMMARY JUDGMENT AS TO MS. WOODRUFF'S FEDERAL AND STATE MALICIOUS PROSECUTION CLAIMS.

The district court also erred in granting summary judgment as to Ms. Woodruff's federal and state malicious prosecution claims.

### A. Ms. Woodruff's Federal Malicious Prosecution Claim.

There is no merit to Officer Oliver's contention that the preliminary examination "serves as the dividing line between claims of false arrest or

imprisonment, and those of malicious prosecution." Defendant's Brief, at 20-21. Defendant contends that because the charges against Ms. Woodruff were voluntarily dismissed prior to the preliminary examination, she was not "prosecuted" and therefore cannot bring a viable claim for malicious prosecution. *Id.*

The difficulty with this argument, however, is that it is contrary to this Court's holding in *Sykes*. In *Sykes*, this Court held that in order to show that an investigative officer participated in or that his actions influenced the commencement of criminal proceedings as required to sustain a claim of malicious prosecution, a plaintiff is "required to present some evidence that the impact of [the officer's] misstatements and falsehood in his investigatory materials extended beyond the Plaintiffs' initial arrest and ultimately influenced the Plaintiffs' continued detention." 625 F.3d at 316. This Court specifically held that such influence is not "narrowly limited" to the introduction of the officer's false statements as evidence at the preliminary hearing, but can also be based on the officer's "knowing misstatements" to the prosecutor or his "pressure or influence" over an individual who either made the decision to prosecute or testified at the preliminary hearing." *Id.*

Here, Ms. Woodruff presented sufficient evidence that Officer Oliver made "knowing misstatements" to the prosecutor. Officer Oliver included false information in the arrest warrant indicating that "Defendant Woodruff" was seen on the gas

station security video interacting with the victim, which mislead the reader into believing that Officer Oliver had actually confirmed that Ms. Woodruff was the one seen on the video when she in fact had not. Officer Oliver also failed to indicate in the warrant request that the eyewitness identification of Ms. Woodruff was based upon an eight year old photograph, and omitted the fact that Ms. Woodruff's criminal history report indicated that she had a tattoo on her right arm, which was not described by the victim or seen on the gas station security video. She also omitted from the warrant the fact that Mr. White identified the female suspect at the gas station as "Trinidad" and indicated that Trinidad's Facebook name was "Trinidad Trinity," which was not Ms. Woodruff's Facebook name. (RE.61-3: Facial Recognition Document; PageID#1795). Given this evidence, a question of fact exists as to whether Officer Oliver made "knowing misstatements" to the prosecutor such that she has a viable claim for malicious prosecution.

The district court's decision should be reversed and this matter should be submitted to a jury.

### B. Ms. Woodruff's State Law Malicious Prosecution Claim.

As set forth in Ms. Woodruff's brief on appeal, under Michigan law, when a party is sued for malicious prosecution, a jury may infer malice from an absence of

probable cause. *See Renda v. International Union, UAW*, 114 N.W.2d 343, 363 (Mich. 1962). Here, for all the reasons set forth above and in her brief on appeal, a jury could find that Officer Oliver did not have probable cause for an arrest warrant against Ms. Woodruff. A question of fact therefore exists as to Ms. Woodruff's state law malicious prosecution claim. The district court's dismissal of that claim should be reversed.[1]

---

[1] Although defendant includes an argument on appeal regarding Ms. Woodruff's claim under Michigan's Elliot-Larsen Civil Rights Act, Ms. Woodruff indicated in her response to the motion for summary judgment that she was no longer pursuing her claim under the Elliot-Larsen Civil Rights Act. (RE.29: Plaintiff's Response; PageID#851).

## CONCLUSION

Based on the foregoing, this Court should reverse the district court's August 5, 2025 decision granting summary judgment to defendant Oliver and remand this matter to the district court for further proceedings.

**GRANZOTTO & WITTMANN, P.C.**

**/s/ Mark Granzotto**
**MARK GRANZOTTO (P31492)**
**BETH A. WITTMANN (P63233)**
Attorneys for Plaintiffs-Appellants
2684 Eleven Mile Road, Suite 100
Berkley, Michigan 48072
(248) 546-4649

**LAW OFFICES OF IVAN L. LAND, P.C.**

**/s/ Ivan L. Land**
**IVAN L. LAND (P65879)**
Attorney for Plaintiffs-Appellants
25900 Greenfield Rd., Suite 210
Oak Park, Michigan 48237
(248) 968-4545

Dated: September 8, 2026.

**CERTIFICATION PURSUANT TO FRAP 32(a)(7)(C)**

Beth A. Wittmann, attorney for plaintiff-appellant, hereby certifies pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure that this brief was typed using the Corel Word Perfect word processing program. That program has a function which can calculate the total number of words contained in a document. According to that program function, there are 1,996 words in this brief.

/s/ Mark Granzotto
Counsel for Plaintiff-Appellant

## DESIGNATION OF RECORD ON APPEAL

Pursuant to Sixth Circuit Rule 29(c), plaintiff-appellant designates the following filings in the district court for inclusion in the Record on Appeal:

| **Description Of Entry** | **Date Filed** | **RE No.** | **Range** |
|---|---|---|---|
| Complaint | 8/10/23 | 4 | 61-116 |
| Defendant's Motion for Summary Judgment (w/Exhibits) | 11/5/24 | 23 | 321-746 |
| Order | 11/6/24 | 24 | 747-748 |
| Plaintiff's Motion for Partial Summary Judgment | 11/8/24 | 25 | 749-781 |
| Plaintiff's Response to Motion for Summary Judgment | 11/26/24 | 29 | 848-877 |
| Defendant's Response to Motion for Partial Summary Judgment (w/Exhibits) | 11/27/24 | 30 | 883-927 |
| Defendant's Reply Brief | 12/1/24 | 31 | 928-934 |
| Plaintiff's Reply Brief (w/Exhibits) | 12/11/24 | 37 | 1018-1439 |
| Order Sealing Exhibits | 4/9/25 | 60 | 1783-1785 |
| Defendant's Corrected Exhibits for Motion for Summary Judgment | 4/9/25 | 61 | 1786-1827 |
| Defendant's Corrected Exhibits for Motion for Summary Judgment | 4/9/25 | 62 | 1828-1937 |
| Plaintiff's Corrected Exhibits | | | |

| | | | |
|---|---|---|---|
| for Motion for Partial Summary Judgment | 4/14/25 | 64 | 1940-1984 |
| Plaintiff's Corrected Exhibits for Response to Defendant's Motion for Summary Judgment | 4/14/25 | 65 | 1985-1990 |
| Plaintiff's Corrected Exhibit | 4/15/25 | 67 | 1993-1996 |
| Defendant's Supplemental Brief (w/Exhibits) | 4/22/25 | 70 | 1998-2219 |
| Plaintiff's Response to Supplemental Brief | 4/28/25 | 72 | 2223-2235 |
| Defendant's Reply | 4/29/25 | 73 | 2236-2240 |
| Order | 8/5/25 | 78 | 2245-2293 |
| Judgment | 8/5/25 | 79 | 2294 |
| Notice of Appeal | 8/30/25 | 80 | 2295-2297 |
| Tr. 4/16/25 | 11/11/25 | 82 | 2317-2413 |
| Tr. 4/17/25 | 11/11/25 | 83 | 2414-2423 |

**CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2026, I electronically filed the foregoing paper with the Clerk of the United States Sixth Circuit Court of Appeals, using the ECF system.

/s/ Mark Granzotto